**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| JOSE RAMIREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action |
| v. | ) File No.: |
| | ) |
| THE CITY OF RINCON, GEORGIA, | ) **JURY TRIAL DEMANDED** |
| and MARK GERBINO, in his individual | ) |
| and official capacities, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Jose Ramirez, submits the following Complaint for Damages and Equitable Relief against Defendants the City of Rincon, Georgia, and Mark Gerbino, individually and in his official capacity as the former Chief of the Rincon Police Department (hereinafter collectively referred to as "Defendants"), showing the Court as follows:

## INTRODUCTION

1.

This is employment case arising from race and national origin discrimination.

2.

Mr. Ramirez, a Hispanic man of Puerto Rican origin, was formerly employed by Defendant City of Rincon, Georgia as a law enforcement officer for the City of Rincon's Police Department beginning in 2007. Despite years of excellent performance which was widely recognized by the law enforcement community and the public, he was terminated for pretextual

reasons and without warning on January 16, 2019, at the direction of Defendant Mark Gerbino, who was the Chief of the Rincon Police Department at that time.

3.

Plaintiff asserts claims for race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 *as amended*, 42 U.S.C. § 2000e *et seq*. ("Title VII") seeking declaratory, injunctive, and monetary relief against Defendant City of Rincon.  Plaintiff also alleges race discrimination in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, seeking declaratory, injunctive, and monetary relief against Defendant Gerbino, in his individual capacity and declaratory and injunctive relief against Defendant City of Rincon.

4.

Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, reinstatement or front pay in lieu of thereof, compensatory damages, punitive damages, and attorney's fees and costs of litigation to remedy these civil rights violations.

**<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>**

5.

Mr. Ramirez has satisfied all administrative prerequisites to perfect his claims of discrimination and retaliation under Title VII. Specifically, he timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and has now received the Notice of Right to Sue for his claims under Title VII within the last ninety days.

## JURISDICTION AND VENUE

6.

Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

7.

The violations of Plaintiff's rights occurred in the Southern District of Georgia. Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Savannah Division of the United States District Court for the Southern District of Georgia.

## PARTIES

8.

Plaintiff Jose Ramirez is a Hispanic man of Puerto Rican origin who currently resides in Peachtree City, Fayette County, Georgia.

9.

Defendant City of Rincon, Georgia ("Defendant Rincon" or "the City") is a local government in the State of Georgia.

10.

Defendant Rincon may be served with a summons and copy of the Complaint in this action by delivering process to Mayor Ken Lee, 302 S. Columbia Avenue, Rincon, Georgia 31326.

11.

Defendant Mark Gerbino ("Defendant Gerbino") is the former Chief of the Rincon Police Department. He is sued in his individual and official capacities. Defendant Gerbino is subject to the jurisdiction of this Court and may be served with process by personal service or leaving copies of the summons and Complaint at his dwelling house or usual place of abode with some person of suitable age and discretion residing there, or by delivering a copy of the summons and Complaint to an agent authorized to receive service of process.

12.

At all times relevant to this action, Defendant Rincon was Plaintiff's "employer" as defined by Title VII, 42 U.S.C. § 2000e(b).

13.

At all times relevant to this action, Defendant Rincon was a state actor within the meaning of the Constitution.

14.

At all times relevant to this action, Defendant Gerbino was acting under color of state law in his capacity as the Chief of Police of the Rincon Police Department.

## FACTS

### *Plaintiff Ramirez's Law Enforcement Background and Employment with Rincon Police Department*

15.

Plaintiff Jose Ramirez has served as a law enforcement officer for more than two decades. He began his law enforcement career with the Savannah Metropolitan Police Department in

2000.  In 2005, he joined the Chatham County District Attorney's office as a Criminal Investigator.

16.

Mr. Ramirez began his career with the Rincon Police Department ("RPD") in October 2007.  He worked his way through the ranks – holding the positions of Corporal, Sergeant, and Lieutenant, the second-in-command position at RPD.

17.

Mr. Ramirez developed a stellar reputation as a law enforcement officer in the Rincon community, and received countless awards and extensive training.[1]

18.

In July 2018, when Chief of Police Phillip Scholl resigned, Mr. Ramirez was asked by Mayor Ken Lee, City Manager John Klimm and City Council member Levi Scott to serve as the Interim Chief of Police.

---

[1] Mr. Ramirez has received the following training and awards: Georgia Peace Officer Safety Training (POST) Instructor; Crisis Intervention Instructor; Gang Expert Witness & Instructor; (8) Certificates of Merit from the Savannah Chatham Metro Police Department; Officer of the Year 2002 (SCMPD); City of Rincon Mayor's Choice Humanitarian Award (2010); City of Rincon Public Safety Humanitarian Award (2011); Officer of the Quarter, Rincon Police Department (1st. Quarter 2012); Chief of Police Award of Excellence, Rincon Police Department (2014); Award from Mothers Against Drunk Driving (2002); Voted by the Citizens of Effingham as Most Fabulous Public Safety Officer (Effingham Living, 2016, 2017, 2018); Voted by the Citizens of Effingham as Most Fabulous City Employee (Effingham Living, 2016); Voted by the Citizens of Effingham as Most Fabulous Man (Effingham Living, 2018); Supervision Levels I, II, and III (Supervision Certification Pending); Management Levels I, II, and III (Management Certification Pending); Executive Training (Chief School) 2018; and Vice President of the Georgia Gang Investigators Association.

19.

Mr. Ramirez served as Interim Chief from July 2018 through October 2018, when Defendant Gerbino was hired by Defendant Rincon as the permanent Chief of Police.

### *Defendant Gerbino's Pattern and History of Discrimination*

20.

Defendant Rincon knew or should have known at the time that it hired Defendant Gerbino that he had a history of complaints of race discrimination and hostile work environment made against him by employees in previous law enforcement jurisdictions in which he had worked, including the City of Savannah Metropolitan Police Department and the City of Americus Police Department, which led to investigations into Defendant Gerbino's conduct and severe disciplinary action against him.

21.

For example, during the time that Defendant Gerbino was employed by the Savannah Metropolitan Police Department from 2008 to 2011, he was broadly accused of abusive workplace conduct and specifically accused of race discrimination by at least two employees.

22.

An Asian Captain of the Savannah Metropolitan Police Department complained that he and other minorities were targeted by Defendant Gerbino for abuse and mistreatment. When a Latino Sergeant questioned a burdensome policy implemented by Defendant Gerbino that required him to inform Defendant Gerbino by email each time that he communicated with a Major or the Police Chief, along with the substance of the communication, Defendant Gerbino responded that the Sergeant was "emotional" because he is Latino.

6

23.

The Savannah law firm of Ellis, Painter, Ratteree & Adams LLP conducted an independent investigation into complaints made against Defendant Gerbino at the request of the Department, and concluded, among other things, that Defendant Gerbino lost his temper and blew up at subordinates, "twist[ed] the facts," "lie[d] to suit his own purposes," was erratic, and spoke in a derogatory manner about employees.

24.

Gerbino was found to have violated the code of conduct regarding truthfulness, offensive or harassing conduct, and being disrespectful about the race or national origin of other officers. The investigation ultimately recommended that Defendant Gerbino should be "severely disciplined up to and including termination," and at the very least removed from a leadership position.

25.

Based on the findings of the independent investigation, the Savannah Metropolitan Police Chief determined that Defendant Gerbino created a hostile work environment for employees.

26.

The Savannah Metropolitan Police Department allowed Defendant Gerbino to resign from his position, effective February 27, 2011.  Upon information and belief, if Defendant Gerbino had not resigned, he would have been terminated.

27.

During the time that Defendant Gerbino was employed by the City of Americus Police Department from 2011 to 2013, he was accused of similar abusive workplace conduct, particularly towards female employees.

7

28.

Atlanta attorney Lorene Schaefer conducted an independent investigation of complaints made against Defendant Gerbino at the request of the Department and determined that Defendant Gerbino regularly used derogatory and profane language to describe City of Americus employees, and commonly used very offensive, derogatory and profane language to describe female employees.

29.

Defendant Gerbino's conduct and the complaints against him related to his profane comments about female employees of the City of Americus were ultimately investigated by the Georgia Peace Officer Standards and Training Council (POST), which determined that Defendant Gerbino's conduct violated peace officer standards.

30.

The City of Americus Police Department allowed Defendant Gerbino to resign from his position, effective May 17, 2013. Upon information and belief, if Defendant Gerbino had not resigned, he would have been terminated.

31.

The history of complaints of discrimination and hostile work environment made against Defendant Gerbino during his tenure at the Savannah Metropolitan Police Department and the City of Americus Police Department are matters of public record that were either not investigated or willfully ignored by Defendant Rincon prior to hiring Defendant Gerbino as its Chief of Police in October 2018.

***Defendant Gerbino's Discriminatory and Disparate Treatment of Mr. Ramirez***

32.

Mr. Ramirez was the only Hispanic officer at RPD at the time that Defendant Gerbino was hired, and one of only three officers of racial minorities in the Department.

33.

Shortly after Defendant Gerbino was sworn into his position as Chief of Police, he informed Sergeant Daniel Thompson, "I want Ramirez gone and I want Officer Adam Griffin (African American) and Officer Brittany Hadden (LGBTQ) gone." Mr. Ramirez had only met Defendant Gerbino once at that point, at Defendant Gerbino's swearing-in ceremony.

34.

Once Defendant Gerbino became the Chief of Police, Mr. Ramirez was warned by other officers that Defendant Gerbino was "out to get him." Defendant Gerbino also regularly asked lower-ranking officers if Mr. Ramirez was speaking negatively about him, without any basis.

35.

Mr. Ramirez began to receive telephone calls from former employees of other law enforcement jurisdictions warning him of Defendant Gerbino's hostile and deceptive workplace manner, which he described to Captain Dan Flood.

36.

Upon assuming his position as Chief, Defendant Gerbino claimed that he conducted a full evaluation of each of the divisions of RPD, but did so without ever consulting with Mr. Ramirez, the second highest ranking member of his command staff.

37.

During his first command staff meeting, Defendant Gerbino made numerous statements to indicate that he views ethnicity and national origin as defining characteristics. He repeatedly informed the other officers that he is Italian. He then looked at Mr. Ramirez and stated, "and you, I can tell you're Puerto Rican," before making statements regarding the ancestry of the other officers present, all of whom were Caucasian.

38.

Although Mr. Ramirez retained his Lieutenant title, Defendant Gerbino stripped him of responsibilities that he had performed for over five years, including overseeing the Patrol Division, recruiting, training, the Quartermaster, Criminal Investigations, vehicle maintenance, Public Information/Community Affairs, and scheduling.

39.

Defendant Gerbino assigned these duties to Caucasian officers of lower rank. Mr. Ramirez was left to manage just one probation officer and handle the budget.

40.

Defendant Gerbino then stripped Mr. Ramirez of his budget duties in December 2018. Mr. Ramirez was not given new responsibilities by Defendant Gerbino.

41.

Defendant Gerbino also gave Mr. Ramirez conflicting assignments that were designed to make Mr. Ramirez fail in his position and overrode Mr. Ramirez's instructions to subordinates.

42.

Defendant Gerbino undermined Mr. Ramirez's authority and decision-making with respect to subordinates and attempted to write Mr. Ramirez up for obviously bogus reasons.  For example, on one occasion, Defendant Gerbino sought authority from City Manager John Klimm to write up Mr. Ramirez for eating a protein bar during a meeting, which Mr. Klimm denied.

43.

Defendant Gerbino was reticent to communicate directly with Mr. Ramirez and instead communicated with him through Caucasian subordinates.

44.

Defendant Gerbino regularly treated Caucasian officers to meals during their work shifts, but never invited Mr. Ramirez for a meal.

45.

Defendant Gerbino also immediately began to treat Caucasian employees more favorably than Mr. Ramirez and other minority employees, including Officer Adam Griffin (African American), who he eventually terminated a few days prior to terminating Mr. Ramirez, consistent with his earlier statements to Sergeant Thompson.

46.

Defendant Gerbino also allowed Caucasian officers to use tobacco products on the job and permitted a detective and police clerk who were dating to work in the same department, both in violation of City of Rincon policies.

47.

In contrast, Defendant Gerbino told a Latino officer that he should act "like a secretary" for him and handle his dry cleaning.  Defendant Gerbino suggested that the Latino officer perform menial tasks for him because, "I know how you Latinos are."

48.

In October 2018, Defendant Gerbino cooked a pot of chili for RPD employees to share. He told Mr. Ramirez, "I didn't make it spicy because I know you're not a real Mexican," in reference to the fact that Mr. Ramirez is of Puerto Rican descent.

### *Defendant Gerbino Terminates Mr. Ramirez for Pretextual Reasons*

49.

On January 16, 2019, Mr. Ramirez was instructed by Defendant Gerbino to report to the City of Rincon's Council Room/Courtroom.

50.

There, he was met by Defendant Gerbino, Rincon City Manager John Klimm, and other officers from RPD. Mr. Klimm informed Mr. Ramirez that Defendant Gerbino had recommended his termination, and he had accepted the recommendation.

51.

Defendant Gerbino's stated reason for terminating Mr. Ramirez' employment was "insubordination" and "poor work performance."

52.

However, Mr. Ramirez had never received any form of discipline during his career at

RPD.

53.

Defendant Gerbino never discussed any of Mr. Ramirez's alleged performance deficiencies with him – all of which were easily refuted – prior to recommending his termination.

54.

Although Defendant Rincon implements a progressive discipline protocol as a standard practice prior to terminating an employee, it followed no such procedure before terminating Mr. Ramirez.

55.

Caucasian officers at RPD accused of insubordination were not immediately terminated and were instead allowed to proceed through a standard progressive disciplinary process.

56.

In terminating his employment for false and pretextual reasons, Defendants were motivated by a discriminatory animus against Mr. Ramirez because of his race (Hispanic) and national origin (Puerto Rican).

57.

Mr. Ramirez appealed his termination at a hearing on April 4, 2019, and informed Defendant Rincon that his termination was an act of discrimination because of his race and national origin. However, the hearing officer, Defendant Rincon's City Attorney Raymond Dickey, refused to hear evidence to support Mr. Ramirez's claim for discriminatory termination.

58.

Mr. Ramirez's termination was upheld and his employment with Defendant Rincon and RPD ended effective January 16, 2019.

59.

Jonathan Murrel (Caucasian) replaced Mr. Ramirez as Lieutenant and second-in-command at RPD.

60.

After Mr. Ramirez was terminated, and while he was still the Chief of Police, Defendant Gerbino proactively contacted Mr. Ramirez's potential employers to disparage him and interfere with his ability to obtain new employment.

61.

Upon information and belief, other employees of Defendant Rincon made complaints of discrimination against Defendant Gerbino following Mr. Ramirez's termination.

62.

Defendant Gerbino abruptly resigned from his position as Chief of Police on September 11, 2019.  Upon information and belief, if Defendant Gerbino had not resigned, he would have been terminated by Defendant Rincon.

***Governmental and Decisionmaker Liability and Punitive Damages Allegations***

63.

At all times relevant and material to this Complaint, Defendant Gerbino was the highest-ranking City official with final policymaking authority to promote, appoint, discipline, and take other personnel actions affecting employees of the RPD, including Mr. Ramirez.

64.

Defendant Gerbino recommended that Plaintiff's employment be terminated.

65.

Plaintiff's employment would not have been terminated "but for" Defendant Gerbino's recommendation to do so, and Defendant Gerbino's recommendation was the "but for cause of, and determinative influence on" Plaintiff's termination.

66.

Defendant Gerbino was the final decisionmaker and individual with final policymaking authority with respect to the unlawful employment actions giving rise to and complained of in this Complaint, which were rubber-stamped by the City Manager of Defendant Rincon.

67.

Defendant Gerbino undertook all the unlawful actions giving rise to the claims alleged in this Complaint while acting under color of state and local law.

68.

Defendant Gerbino undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to Mr. Ramirez and his federally protected rights. Additionally, and in the alternative, Defendant Gerbino undertook all of the above-pled conduct with reckless disregard for Mr. Ramirez and his federally protected rights.

**COUNT I**
**RACE DISCRIMINATION IN VIOLATION**
**OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**AS AMENDED, 42 U.S.C. § 2000e** *et seq.*
***against Defendant City of Rincon***

69.

Paragraphs 15 through 68 of Plaintiff's Complaint are incorporated herein by reference.

70.

Plaintiff is a member of a protected class in that he is Hispanic.

71.

At all relevant times, Plaintiff was an "employee" of Defendant City of Rincon as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq*.

72.

At all relevant times, Defendant City of Rincon was an "employer" as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq.*

73.

Defendant City of Rincon through its Chief of Police, Defendant Gerbino, subjected Plaintiff to numerous adverse employment actions on the basis of his race, Hispanic, including, but not limited to, stripping him of responsibilities, undermining his authority, seeking bogus reasons to discipline him, and finally terminating his employment on January 16, 2019.

74.

Defendant City of Rincon lacks any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or any such purported legitimate justifications are mere pretext for race discrimination.

16

75.

The above-pled actions of Defendant City of Rincon constitute race discrimination in violation of Title VII of the Civil Rights Act of 1964.

76.

The actions of Defendant City of Rincon in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of his federally protected rights.

77.

Mr. Ramirez's race was a "motivating factor" in the decisions by Defendant City of Rincon to subject him to discrimination on the basis of his race as pled above, even if the race of Plaintiff was not the only factor that motivated the decision of Defendant to subject Plaintiff to race discrimination.

78.

As a direct and proximate result of Defendant City of Rincon's violations of Title VII, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

79.

As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover his lost wages and economic benefits of his employment, compensatory damages for emotional distress, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

**COUNT II**
**NATIONAL ORIGIN DISCRIMINATION IN VIOLATION**
**OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**AS AMENDED, 42 U.S.C. § 2000e *et seq.***
***against Defendant City of Rincon***

80.

Paragraphs 15 through 68 of Plaintiff's Complaint are incorporated herein by reference.

81.

Plaintiff is a member of a protected class in that he is of Puerto Rican origin and descent.

82.

At all relevant times, Plaintiff was an "employee" of Defendant City of Rincon as that term is defined by Title VII, 42 U.S.C. § 2000e et seq.

83.

At all relevant times, Defendant City of Rincon was an "employer" as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq.*

84.

Defendant City of Rincon through its Chief of Police, Defendant Gerbino, subjected Plaintiff to numerous adverse employment actions on the basis of his national origin, Puerto Rican, including, but not limited to, stripping him of responsibilities, undermining his authority, seeking bogus reasons to discipline him, and finally terminating his employment on January 16, 2019.

85.

Defendant City of Rincon lacks any legitimate justification for subjecting Plaintiff to the adverse employment actions complained of above, and/or any such purported legitimate

justifications are mere pretext for national origin discrimination.

86.

The above-pled actions of Defendant City of Rincon constitute national origin discrimination in violation of Title VII of the Civil Rights Act of 1964.

87.

The actions of Defendant City of Rincon in subjecting Plaintiff to the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff, and were in derogation of his federally protected rights.

88.

Mr. Ramirez's national origin was a "motivating factor" in the decisions by Defendant City of Rincon to subject him to discrimination on the basis of his national origin as pled above, even if the national origin of Plaintiff was not the only factor that motivated the decision of Defendant to subject Plaintiff to national origin discrimination.

89.

As a direct and proximate result of Defendant City of Rincon's violations of Title VII, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

90.

As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover his lost wages and economic benefits of his employment, compensatory damages for emotional distress, as well as front pay and other equitable relief, and all other legal and equitable relief provided for

by Title VII and all statutes providing for relief for violations of Title VII.

**COUNT III**
**RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**
*(Asserted via 42 U.S.C. § 1983 against Defendant City of Rincon*
*and via 42 U.S.C. § 1981 against Defendant Gerbino)*

91.

Paragraphs 15 through 68 of Plaintiff's Complaint are incorporated herein by reference.

92.

Plaintiff and Defendants were parties to an employment agreement under which, *inter alia*, Plaintiff worked for Defendants and Plaintiff was compensated for his work.

93.

Plaintiff performed his contractual obligations.

94.

42 U.S.C. § 1981 prohibits Defendants from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of his employment contract with Defendant Rincon.

95.

Defendants violated Plaintiff's rights under 42 U.S.C. § 1981 by subjecting him to disparate treatment and terminating his employment because of his race rather than for a legitimate justification.

96.

As a direct and proximate result of Defendants' violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits,

humiliation, and other indignities.

97.

Defendants undertook all of the unlawful conduct giving rise to Plaintiff's claims while acting under color of State, local law, regulations, customs or usages.

98.

Defendant Gerbino, in his capacity as the Chief of the Rincon Police Department possessed final policymaking authority with respect to the wrongful actions he undertook against Plaintiff which are complained of herein, which were rubber-stamped by the City Manager of Defendant City of Rincon.

99.

Defendant Gerbino, individually and in his official capacity, violated clearly established law.

100.

Defendant Gerbino, individually and in his official capacity, undertook his unlawful conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against him.

101.

Additionally, Defendant Gerbino, individually and in his official capacity, undertook his unlawful conduct recklessly with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against him.

102.

Defendants' actions were willful, wanton, and intentionally directed to harm Plaintiff.

103.

Defendants' actions were reckless and were taken in willful disregard of the probable consequences of their actions.

104.

As a direct and proximate result of the Defendants' violations of 42 U.S.C. §§ 1981 and 1983, Plaintiff has suffered damages including lost wages, emotional distress, inconvenience, loss of benefits, humiliation, and other indignities.

**COUNT IV**
**RACE DISCRIMINATION IN VIOLATION OF THE**
**EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION**
**(Asserted via 42 U.S.C. § 1983)**
*Against All Defendants*

105.

Paragraphs 15 through 68 of Plaintiff's Complaint are incorporated herein by reference.

106.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the laws, including equal protection with respect to race.

107.

Defendants subjected Plaintiff to disparate treatment and terminated Plaintiff's employment based upon his race rather than because of a legitimate justification.

108.

No compelling or other governmental interest supports the Defendants' use of race as a basis for the employment decision giving rise to this Complaint.

109.

Defendants undertook all of the unlawful conduct giving rise to Plaintiff's claims while acting under color of State, local law, regulations, customs or usages.

110.

Defendant Gerbino, individually and in his official capacity, violated clearly established law prohibiting the termination of employees based on race.

111.

Defendant Gerbino undertook his unlawful conduct intentionally, recklessly and maliciously with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover compensatory and punitive damages against him, individually.

112.

Defendants' actions were willful, wanton, and intentionally directed to harm Plaintiff.

113.

Defendants' actions were reckless and were taken in willful disregard of the probable consequences of their actions.

114.

As a direct and proximate result of the Defendants' violations of the Equal Protection Clause, Plaintiff has suffered damages including lost wages, emotional distress, inconvenience, loss of benefits, humiliation, and other indignities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

1. Adjudicate and declare that Defendants have violated Plaintiff's federally protected rights as pled above;

2. Permanently enjoin Defendants from committing similar violations in the future;

3. Award Plaintiff back pay, including all lost wages and benefits, pay increases Plaintiff would have received absent his unlawful termination, and all other benefits of employment reducible to a dollar value;

4. Award Plaintiff pre-judgment and post-judgment interest as required by law;

5. Award Plaintiff compensatory damages for emotional pain and suffering as determined by the enlightened conscience of a jury;

6. Award Plaintiff punitive damages against the individually named Defendant Mark Gerbino pursuant to 42 U.S.C. § 1981, the Equal Protection Clause of the United States Constitution, 42 U.S.C. § 1983, and all other applicable federal and state laws in an amount to be determined by the trier of fact;

7. Order Defendant City of Rincon to reinstate Plaintiff with all compensation and benefits made retroactive to his last day of employment or, in lieu of same, award front pay;

8. Award Plaintiff his reasonable attorneys' fees and expenses; and

9. Grant such additional relief as may be proper and just.

Respectfully submitted this 15th day of June 2021.

**BUCKLEY BEAL, LLP**

*/s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin
Georgia Bar No. 707419

rberlin@buckleybeal.com
*/s/ Ashley Wilson Clark*
Ashley Wilson Clark
Georgia Bar No. 771512
awilsonclark@buckleybeal.com
600 Peachtree Street, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101
*Counsel for Plaintiff*